**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>131 M Street, N.E.,<br>Washington, D.C. 20507<br><br>Plaintiff,<br><br>v.<br><br>SECURITY ASSURANCE MANAGEMENT, INC.,<br><br>818 Connecticut Ave., NW<br>Washington, D.C. 20006<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:25-cv-181<br><br><br>**COMPLAINT**<br><br>JURY TRIAL DEMAND |

**NATURE OF THE ACTION**

The U.S. Equal Employment Opportunity Commission ("the Commission" or "EEOC") brings this action against Security Assurance Management, Inc.  ("SAM" or "Defendant") under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), the Pregnant Workers Fairness Act ("PWFA"), and Title I of the Civil Rights Act of 1991 to correct unlawful pregnancy discrimination and retaliation and to provide appropriate relief to Simone Cooper ("Cooper"). As is alleged below, Defendant violated the PWFA and Title VII when it removed Cooper from her assignment due to her pregnancy, denied reasonable accommodations for her lactation needs once she returned to work, disciplined her, retaliated against her for requesting reasonable accommodations and made complaints about the lack of accommodations, and discharged her.

**JURISDICTION AND VENUE**

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), Section 104 of the PWFA, 42 U.S.C. § 2000gg-2(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Columbia.

**PARTIES**

3.      Plaintiff, the Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of, *inter alia*, the PWFA and Title VII, and is expressly authorized to bring this action pursuant to Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1), (3), and Section 104(a) of the PWFA, 42 U.S.C. § 2000gg-2(a).

4.      At all relevant times, SAM, a District of Columbia corporation, has continuously been doing business in the District of Columbia, and has continuously had at least 15 employees.

5.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h), and a covered entity under Section 102(2)(B)(i) of the PWFA, 42 U.S.C. § 2000gg(2)(B)(i).

**CONDITIONS PRECEDENT**

6.      All conditions precedent to the institution of this lawsuit have been fulfilled.

2

7.      More than thirty days prior to the institution of this lawsuit, Cooper filed a Charge of Discrimination with the EEOC alleging sex and pregnancy discrimination and retaliation in violation of Title VII and the PWFA by Defendant.

8.      On November 8, 2024, the EEOC issued to Defendant an amended Letter of Determination finding reasonable cause to believe that Defendant had violated Title VII and the PWFA.

9.      After issuing its amended Letter of Determination, the EEOC engaged in communications with Defendant to provide it the opportunity to remedy the unlawful employment practices described in the amended Letter of Determination described above.

10.     The EEOC and Defendant were unable to reach agreement through the conciliation process.

11.     On November 19, 2024, the EEOC issued to Defendant a Notice of Conciliation Failure advising it that the EEOC was unable to secure from Defendant a conciliation agreement acceptable to the EEOC.

## STATEMENT OF CLAIMS

12.     Defendant hired Cooper as an Unarmed Special Police Officer ("SPO") in April 2021.

13.     From approximately July 2022 through March 2023, Cooper was stationed at the District of Columbia Department of Behavioral Health's Comprehensive Psychiatric Emergency Program ("CPEP").

14.     Throughout her assignment at CPEP, Cooper's job performance was satisfactory and she did not receive any negative performance evaluations or discipline.

15.     In March 2023, Cooper was in her third trimester of pregnancy.

16.     Cooper did not request or require any pregnancy-related accommodations while assigned to CPEP.

17.     On or about March 5, 2023, Defendant's lead supervisor overseeing SAM's contract with CPEP informed Cooper that she could not come to work the following day because CPEP did not want her working at its jobsite while pregnant.

18.     For three weeks following Cooper's removal from CPEP, Defendant only scheduled Cooper to work one and a half days total at another jobsite.

19.     Throughout her assignment at CPEP, Cooper worked five days per week.

20.     After Defendant removed Cooper from CPEP, Cooper asked the lead supervisor for additional work, but Defendant failed to schedule her at another job site with a daytime schedule comparable to what she had at CPEP.

21.     On March 30, 2023, Cooper gave birth and began her maternity leave.

22.     Cooper returned to work in early September 2023, when Defendant assigned her to work as an Unarmed SPO at a Hampton Inn where the D.C. Department of General Services ("DGS") was operating a shelter.

23.     At all relevant times, including from September 2023 through December 2023, Cooper was a qualified individual under Section 102(6) of the PWFA, 42 U.S.C. § 2000gg(6), because, with or without the reasonable accommodations described below, she could perform the essential functions of her job as an Unarmed SPO.

24.     At all relevant times, including from September 2023 through December 2023, Cooper had a known limitation related to, affected by, or arising out of pregnancy, childbirth, or related medical condition (*i.e.*, lactation), herein referred to as her "pregnancy-related medical condition."

25.    At all relevant times, including from September 2023 through December 2023, Defendant was aware that Cooper was lactating and of the limitations related to, affected by, or arising out of that pregnancy-related medical condition.

26.    From late September 2023 through December 1, 2023, Cooper continuously requested reasonable accommodations for her pregnancy-related medical condition in the form of an appropriate room in which to pump during the workday, and to be scheduled to work on a floor that would permit her to take a late-morning break to pump or, in the alternative, to be given an additional lactation break later in the morning to permit her to pump at work.

27.    From late September 2023 through December 2023, Defendant failed to engage in good faith in the interactive process despite having knowledge of Cooper's limitations relating to, affected by, or arising out of her pregnancy-related medical condition and despite the availability of reasonable accommodations.

28.    At the Hampton Inn jobsite, Cooper worked from 7:00 a.m. to 3:00 p.m., Tuesday through Saturday.

29.    SAM's lead supervisor assigned to oversee Defendant's DGS contract at the Hampton Inn assigned the SPOs to specific floors at the hotel.

30.    The time for each SPO's break at the Hampton Inn was determined by which floor they were assigned to.

31.    Throughout Cooper's assignment at the Hampton Inn, she was breastfeeding and needed to pump breast milk during her shift.

32.    Throughout Cooper's assignment at the Hampton Inn site, Tuesday through Friday, Cooper was assigned to the sixth floor, which allowed her to take her break and pump at an appropriate time.

33.    During the first two Saturday shifts she worked in September 2023, Cooper was also assigned to floors where she had appropriately timed breaks that permitted her to pump at work.

34.    On Friday September 22, 2023, Cooper learned she was assigned to work on the eighth floor for the next day, which would require her to take her only break at 8:00 a.m.

35.    On September 22, 2023, Cooper texted her lead supervisor and asked to be reassigned to the sixth floor for her Saturday shifts.

36.    In her text to her lead supervisor, Cooper explained that "[b]eing on the 8th floor requires me to go on break one hour after the start of my shift. I use my lunch hour to lactate and that is too soon for me to do so because I do it before I leave home also."

37.    Cooper's lead supervisor responded over text, "Unfortunately I'm not making any post assignment changes all posts are set."

38.    In response, Cooper stated: "In that case, I will require an additional break throughout my shift to lactate. Please notify the lead or breaker to make this accommodation."

39.    The lead supervisor only responded, "Please reach out to HR," and took no further steps to accommodate Cooper's scheduling request.

40.    Because the Human Resources department was closed for the weekend and Defendant had failed to accommodate her lactation needs, Cooper was forced to call out of work on Saturday, September 23, 2023.

41.    On Monday, September 25, 2023, Cooper attempted to contact Defendant's Director of Human Resources regarding her lactation needs but did not receive a response.

42.    On September 25, 2023, Cooper filed a union grievance based on Defendant's failure to accommodate her lactation needs.

43.    On September 26, 2023, Cooper and her union representative met with Defendant's

Director of Human Resources and Director of Government Relations.

44.    During the September 26 meeting, Cooper requested that on Saturdays she be assigned to a floor where she could take her break to pump at 10:00 a.m. or 11:00 a.m., or, in the alternative, be given an additional break later in the day so that she could pump at work.

45.    During the September 26 meeting, Cooper stated that since returning to work in early September 2023, she had been pumping in her car in the hotel parking lot, and she requested a suitable, private place to pump.

46.    During the meeting, the Director of Government Relations stated that he would evaluate the situation and follow up prior to Cooper's next Saturday shift. However, he did not do so.

47.    Despite her request for a later break time, on Saturday, September 30, 2023, Defendant assigned Cooper to a floor with an 8:00 a.m. break time.

48.    Because she was unable to take a later break on September 30, 2023, Cooper was unable to pump during her shift, and she leaked through her shirt while at work.

49.    In response to the events of September 30, 2023, Cooper and her union representatives reiterated Cooper's accommodation requests to Defendant and also complained that the requests had not been granted.

50.    On October 5, 2023, Defendant's attorney identified Room 207 for Cooper to use to pump and told her that her point of contact would be a site manager at the hotel.

51.    When Cooper sought to use Room 207 on October 6, 2023, she discovered that no such room existed at the Hampton Inn.

52.    Cooper then asked a DGS employee about the site manager whom Defendant had directed her to speak with but was told that there was no site manager with that name and that DGS

7

was unaware of any accommodations arranged for Cooper.

53.    On October 6, 2023, Cooper called Defendant's Director of Government Relations, who did not answer, and also called and left a message with SAM's front office requesting that Defendant call her back. She did not receive a response.

54.    Following the events of October 6, 2023, Cooper continued to follow up with Defendant regarding her accommodation requests through her union representatives, but received no response from Defendant.

55.    As a result of Defendant's failure to accommodate Cooper and provide her with necessary breaks to pump during her Saturday shift, Cooper was forced to call out of work on the following Saturdays: October 7, 2023 and October 14, 2023.

56.    Because of Defendant's ongoing failure to provide an appropriate lactation room, Cooper was forced to continue to pump in her car during her weekday shifts.

57.    On Saturday, October 21, 2023, Cooper worked her scheduled shift and was not relieved for her break until 1:00 p.m.

58.    Because Defendant had again failed to provide Cooper with a late-morning break for pumping on October 21, 2023, Cooper leaked through her shirt and her sweater during her shift.

59.    On October 21, 2023, Cooper texted her lead supervisor that she had leaked through her clothes and needed to go home in order to "express properly in a private place (not my car) and shower."

60.    In her text to her lead supervisor on October 21, 2023, Cooper reiterated that she had requested accommodations in the form of "more frequent or reasonable break time" in order to pump.

61.    In response to Cooper's text on October 21, 2023, Cooper's lead supervisor

confirmed that someone would relieve Cooper on that day but took no steps to address Cooper's requests for reasonable accommodations.

62.    After the events of October 21, 2023, Cooper and her union representatives continued to complain that Cooper's lactation needs were not being addressed.

63.    As a result of Defendant's failure to accommodate Cooper and provide her with necessary breaks to pump during her Saturday shift, Cooper was forced to call out of work on Saturday October 28, 2023.

64.    On November 3, 2023, Defendant's attorney identified a room in the hotel that Cooper could use to pump.

65.    When Cooper requested a key to the room, she was provided the same master key that all security officers and hotel staff also had and could use to access the room.

66.    When she entered the identified room, Cooper found men's clothes hanging in the bathroom.

67.    Later that same day, Cooper attempted to contact Defendant multiple times regarding the problems with the designated room but did not receive a call back.

68.    Defendant did not schedule Cooper for any Saturday shifts in November.

69.    On November 10, 2023, Cooper's union attorney informed Defendant's attorney that the room was unacceptable because it was accessible to other staff and appeared to be in use by someone else. The union attorney again requested that Defendant provide Cooper with an appropriate space to pump during the workday. Defendant did not respond.

70.    Because Defendant failed to accommodate Cooper and provide an appropriate lactation room, Cooper was forced to continue pumping in her car during her weekday breaks for the remainder of her employment.

71.    On December 1, 2023, Defendant issued Cooper a First Written Warning for "excessive absenteeism." The warning accused Cooper of "develop[ing] a pattern on Saturdays."

72.    Defendant issued the December 1 warning despite knowing that Cooper had been forced to miss work on Saturdays due to its refusal to accommodate her lactation schedule during her Saturday shifts.

73.    The December 1 warning included the Saturdays in November when Defendant had not scheduled Cooper to work.

74.    The December 1 warning also disciplined Cooper for leaving early on October 21, 2023,  when she had leaked through her shirt.

75.    Prior to its issuance of the December 1 warning, Defendant had never issued Cooper any warnings, counseling, or discipline regarding her attendance.

76.    At the December 1, 2023 meeting, Cooper told Defendant that she was able to work on Saturdays provided her schedule was accommodated so that she could pump during the workday.

77.    Following the December 1, 2023 meeting, Defendant never scheduled Cooper for another shift.

78.    Cooper followed up with Defendant regarding her work schedule, but remained off the schedule.

79.    Having not worked in over a month, in January 2024, Cooper was forced to accept a full-time position at another security firm.

80.    In her March 29, 2024, Amended Charge of Discrimination, Cooper alleged that after a month of not being scheduled for work, she "was effectively discharged and forced to get another security job with another firm."

81.    Defendant received notice of the Amended Charge of Discrimination through the

EEOC's online portal on or about April 4, 2024.

### Count One: Failure to Accommodate in Violation of the PWFA (42 U.S.C. § 2000gg-1(1))

82.     The EEOC hereby repeats and incorporates by reference the allegations in paragraphs 12–81.

83.     Beginning in September 2023, Defendant has engaged in unlawful employment practices in violation of the PWFA, 42 U.S.C. § 2000gg-1(1).

84.     The unlawful employment practices contained in Count One include failing to provide reasonable accommodations to Cooper's known limitations relating to, affected by, or arising out of her pregnancy-related medical condition, including, but not limited to, scheduling accommodations to enable her to express breastmilk at appropriate times during the workday and the provision of an appropriate lactation area at work.

85.     Defendant could have reasonably accommodated the known limitations related to, affected by, or arising out of Cooper's pregnancy-related medical condition without imposing an undue hardship on the operation of its business.

86.     The effect of the practices complained of above has been to deprive Cooper of equal employment opportunities and to otherwise adversely affect her status as an employee on account of the known limitations related to, affected by, or arising out of her pregnancy-related medical condition.

87.     The unlawful practices complained of above were intentional.

88.     The unlawful practices complained of above were done with malice or with reckless indifference to the federally protected rights of Cooper.

89.     As a result of Defendant's unlawful conduct, Cooper has suffered damages, including, but not limited to, lost earnings and benefits, emotional distress, pain and suffering,

anxiety, loss of enjoyment of life, humiliation, embarrassment, and inconvenience, and other actual pecuniary and non-pecuniary damages.

## Count Two: Adverse Actions on Account of Requesting Reasonable Accommodations in Violation of the PWFA (42 U.S.C. § 2000gg-1(5))

90.     The EEOC hereby repeats and incorporates by reference the allegations in paragraphs 12–81.

91.     Beginning in September 2023, Defendant has taken adverse actions against Cooper in the terms, conditions, and privileges of her employment on account of her requesting reasonable accommodations for the known limitations related to, affected by, or arising out of her pregnancy-related medical condition, in violation of the PWFA, 42 U.S.C. § 2000gg-1(5).

92.     The adverse actions in Count Two are as follows: removing Cooper from the work schedule; disciplining her for absences caused by Defendant's failure to accommodate her lactation needs; and discharging her or, in the alternative, constructively discharging her by creating work conditions so intolerable that a reasonable person in Cooper's circumstances would have felt compelled to resign their employment.

93.     The effect of the practices complained of above has been to deprive Cooper of equal employment opportunities and to otherwise adversely affect her status as an employee on account of her known limitations related to, affected by, or arising out of her pregnancy-related medical condition.

94.     The unlawful practices complained of above were intentional.

95.     The unlawful practices complained of above were done with malice or with reckless indifference to the federally protected rights of Cooper.

96.     As a result of Defendant's unlawful conduct, Cooper has suffered damages, including, but not limited to, lost earnings and benefits, emotional distress, pain and suffering,

anxiety, loss of enjoyment of life, humiliation, embarrassment, and inconvenience, and other actual pecuniary and non-pecuniary damages.

**Count Three: Denial of Employment Opportunities Based on the Need to Make Reasonable Accommodations in Violation of the PWFA (42 U.S.C. § 2000gg-1(3))**

97.    The EEOC hereby repeats and incorporates by reference the allegations in paragraphs 12–81.

98.    Beginning in September 2023, Defendant has denied Cooper employment opportunities based on the need to make reasonable accommodations for the known limitations related to, affected by, or arising out of her pregnancy-related medical condition, in violation of the PWFA, 42 U.S.C. § 2000gg-1(3).

99.    The unlawful employment practices contained in Count Three are as follows: forcing Cooper to call out of work on Saturdays due to Defendant's failure to accommodate her lactation needs; removing her from the work schedule; disciplining her for absences caused by Defendant's failure to accommodate her lactation needs; and discharging her or, in the alternative, constructively discharging her by creating work conditions so intolerable that a reasonable person in Cooper's circumstances would have felt compelled to resign their employment.

100.    The effect of the practices complained of above has been to deprive Cooper of equal employment opportunities and to otherwise adversely affect her status as an employee on account of the known limitations related to, affected by, or arising out of her pregnancy-related medical condition.

101.    The unlawful practices complained of above were intentional.

102.    The unlawful practices complained of above were done with malice or with reckless indifference to the federally protected rights of Cooper.

103.    As a result of Defendant's unlawful conduct, Cooper has suffered damages,

including, but not limited to, lost earnings and benefits, emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment, and inconvenience, and other actual pecuniary and non-pecuniary damages.

**Count Four: Retaliation for Engaging in Protected Activities Under the PWFA (42 U.S.C. § 2000gg-2(f)(1))**

104.    The EEOC hereby repeats and incorporates by reference the allegations in paragraphs 12–81.

105.    Beginning in November 2023, Defendant has engaged in unlawful employment practices in violation of the PWFA, 42 U.S.C. § 2000gg-2(f)(1), by retaliating against Cooper because she engaged in the protected activities of requesting reasonable accommodations for the known limitations related to, affected by, or arising out of her pregnancy-related medical condition and/or complaining when those requested accommodations were not provided.

106.    The unlawful retaliatory practices contained in Count Four are as follows: removing Cooper from the work schedule; disciplining her for absences caused by Defendant's failure to accommodate her lactation needs; and discharging her or, in the alternative, constructively discharging her by creating work conditions so intolerable that a reasonable person in Cooper's circumstances would have felt compelled to resign their employment.

107.    The effect of the practices complained of above has been to deprive Cooper of equal employment opportunities and to otherwise adversely affect her status as an employee because she engaged in protected activity.

108.    The unlawful practices complained of above were intentional.

109.    The unlawful practices complained of above were done with malice or with reckless indifference to the federally protected rights of Cooper.

110.    As a result of Defendant's unlawful conduct, Cooper has suffered damages,

including, but not limited to, lost earnings and benefits, emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment, and inconvenience, and other actual pecuniary and non-pecuniary damages.

**Count Five: Interference with Statutorily Protected Rights Under the PWFA (42 U.S.C. § 2000gg-2(f)(2))**

111.    The EEOC hereby repeats and incorporates by reference the allegations in paragraphs 12–81.

112.    Beginning in November 2023, Defendant interfered with Cooper's exercise and enjoyment of her rights under the PWFA, in violation of the PWFA, 42 U.S.C. § 2000gg-2(f)(2).

113.    The unlawful employment practices contained in Count Five are as follows: forcing Cooper to call out of work on Saturdays due to Defendant's failure to accommodate her lactation needs; removing her from the work schedule; disciplining her for absences caused by Defendant's failure to accommodate her lactation needs; and discharging her or, in the alternative, constructively discharging her by creating work conditions so intolerable that a reasonable person in Cooper's circumstances would have felt compelled to resign their employment.

114.    The effect of the practices complained of above has been to deprive Cooper of equal employment opportunities and to otherwise adversely affect her status as an employee on account of the known limitations related to, affected by, or arising out of her pregnancy-related medical condition.

115.    The unlawful practices complained of above were intentional.

116.    The unlawful practices complained of above were done with malice or with reckless indifference to the federally protected rights of Cooper.

117.    As a result of Defendant's unlawful conduct, Cooper has suffered damages, including, but not limited to, lost earnings and benefits, emotional distress, pain and suffering,

anxiety, loss of enjoyment of life, humiliation, embarrassment, and inconvenience, and other actual pecuniary and non-pecuniary damages.

**Count Six: Discrimination on the Basis of Sex in Violation of Title VII (42 U.S.C. § 2000e-2(a)(1)) as Amended by the PDA (42 U.S.C. § 2000e(k))**

118.    The EEOC hereby repeats and incorporates by reference the allegations contained in paragraphs 12–81.

119.    Beginning in March 2023, Defendant has engaged in unlawful employment practices in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1), as amended by the PDA, 42 U.S.C. § 2000e(k), because of Cooper's sex (pregnancy or pregnancy-related medical condition).

120.    The unlawful employment practices contained in Count Six are as follows:

(a) Removing Cooper from her assignment at the CPEP job site in March 2023 and failing to place her at another job site with a comparable schedule or hours due to Cooper's pregnancy;

(b) Beginning in November 2023, removing Cooper from the work schedule instead of accommodating her lactation needs;

(c) Beginning in November 2023, disciplining her for absences caused by Defendant's failure to accommodate Cooper's lactation needs due to Cooper's pregnancy-related medical condition; and discharging her or, in the alternative, constructively discharging her by creating work conditions so intolerable that a reasonable person in Cooper's circumstances would have felt compelled to resign their employment.

121.    The effect of the practices complained of above has been to deprive Cooper of equal employment opportunities and to otherwise adversely affect her status as an employee because of her sex (pregnancy and pregnancy-related medical condition).

122.    The unlawful practices complained of above were intentional.

123.    The unlawful practices complained of above were done with malice or with reckless indifference to the federally protected rights of Cooper.

124.    As a result of Defendant's unlawful conduct, Cooper has suffered damages, including, but not limited to, lost earnings and benefits, emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment, and inconvenience, and other actual pecuniary and non-pecuniary damages.

**Count Seven: Retaliation for Engaging in Protected Activities in Violation of Title VII (42 U.S.C. § 2000e-3(a))**

125.    EEOC hereby repeats and incorporates by reference the allegations contained in paragraphs 12–81.

126.    Beginning in November 2023, Defendant has engaged in unlawful employment practices in violation of Title VII, 42 U.S.C. § 2000e-3(a), by retaliating against Cooper because she engaged in the protected activities of complaining that Defendant was discriminatorily failing to provide her with an effective lactation accommodation for her pregnancy-related medical condition.

127.    The retaliatory practices contained in Count Seven include, but are not limited to, removing Cooper from the work schedule; disciplining her for absences caused by Defendant's failure to accommodate her lactation needs; and discharging her or, in the alternative, constructively discharging her by creating work conditions so intolerable that a reasonable person in Cooper's circumstances would have felt compelled to resign their employment.

128.    The effect of the practices complained of above has been to deprive Cooper of equal employment opportunities and to otherwise adversely affect her status as an employee because she engaged in protected activity.

129.    The unlawful practices complained of above were intentional.

130.    The unlawful practices complained of above were done with malice or with reckless indifference to the federally protected rights of Cooper.

131.    As a result of Defendant's unlawful conduct, Cooper has suffered damages, including, but not limited to, lost earnings and benefits, emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment, and inconvenience, and other actual pecuniary and non-pecuniary damages.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, assignees, and all persons in active concert or participation with Defendant, from engaging in any employment practice that discriminates on the basis of sex, including discrimination on the basis of pregnancy and pregnancy-related medical conditions, from engaging in retaliation for engaging in protected conduct under Title VII and the PWFA, from interfering with employees' exercise of their rights under the PWFA, and from failing or refusing to make reasonable accommodations to the known limitations of employees related to, affected by, or arising out of pregnancy, childbirth or related medical conditions, absent undue hardship.

B.      Order Defendant to institute and carry out policies, practices and programs that provide equal employment opportunities for women, pregnant employees, and employees who require reasonable accommodations for known limitations related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions, and which eradicate the effects of Defendant's past and present unlawful employment practices.

C.      Order Defendant to make Cooper whole by providing appropriate back pay and

lost benefits with prejudgment interest, in amounts to be determined at trial, and other affirmative

relief necessary to eradicate the effects of its unlawful employment practices described above.

D. Order Defendant to make Cooper whole by providing compensation for past and

future pecuniary losses resulting from the unlawful employment practices described above, in

amounts to be determined at trial.

E. Order Defendant to make Cooper whole by providing compensation for past and

future non-pecuniary losses resulting from the unlawful employment practices described above,

including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life,

embarrassment, frustration, and humiliation, in an amount to be determined at trial.

F. Order Defendant to pay Cooper punitive damages for the malicious and reckless

conduct described above, in amounts to be determined at trial.

G. Grant such further relief as this Court deems necessary and proper in the public

interest.

H. Award the Commission its costs of this action.

JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

/s/ Debra M. Lawrence
DEBRA M. LAWRENCE
Regional Attorney
Maryland Bar No. 04312

/s/ Maria Luisa Morocco
MARIA LUISA MOROCCO
Assistant Regional Attorney
EEOC Washington Field Office
131 M Street, N.E., Suite 4NWO2F
Washington, D.C. 20507
maria.morocco@eeoc.gov
Phone: (202) 419-0724
DC Bar No. 489956

/s/ Clare J. Horan
CLARE J. HORAN
Trial Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Philadelphia District Office
801 Market Street, Suite 1000
Philadelphia, PA 19107-3127
clare.horan@eeoc.gov
Phone: (267) 589-9769
Fax: (215) 440-2606
MD Bar No. 2001060014

Date: January 21, 2025