**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, **)** | |
| **)** | |
| Plaintiff, **)** | Civil Action No. 1:25-cv-00181 (RC) |
| **)** | |
| v. **)** | |
| **)** | |
| SECURITY ASSURANCE MANAGEMENT, INC., **)** | |
| **)** | |
| Defendant. **)** | |

## PLAINTIFF EEOC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS

### I.    PRELIMINARY STATEMENT

In its Complaint, the U.S. Equal Employment Opportunity Commission ("Plaintiff" or

"the EEOC") brings five claims against Defendant Security Assurance Management, Inc.

("Defendant") under separate provisions of the Pregnant Workers Fairness Act ("PWFA"). *See*

ECF No. 1, Complaint ("Compl.") at 11–12 (claim under 42 U.S.C. § 2000gg-1(1)); *id.* at 12–13

(claim under 42 U.S.C. § 2000gg-1(5)); *id.* at 13–14 (claim under 42 U.S.C. § 2000gg-1(3)); *id.* at

14–15 (claim under 42 U.S.C. § 2000gg-2(f)(1)); *id.* at 15–16 (claim under 42 U.S.C. § 2000gg-

2(f)(2)). It alleges that Defendant repeatedly denied security guard Simone Cooper ("Cooper"),

reasonable accommodations to enable her to express breastmilk at appropriate times in a private

location during her workday. *See* Compl. ¶¶ 12, 22–70. It also alleges that Defendant forced

Cooper to miss work due to its refusal to accommodate her, *see id.* ¶¶ 40, 55, 57–61, 63,

disciplined her for absences caused by its failure to accommodate her, *see id.* ¶¶ 71–75, removed

her from the schedule rather than accommodate her, *see id.* ¶¶ 68, 76–78, and ultimately

discharged her, *see id.* ¶¶ 76–81. Finally, the EEOC alleges that Defendant retaliated against

Cooper for engaging in protected activity by requesting reasonable accommodations and then complaining to Defendant when they were denied. *See id.* ¶¶ 26, 34–39, 41–45, 49–54, 57–62, 64–69, 76–78.[1]

On March 20, 2025, Defendant filed a complete (not partial) Answer that responded to each allegation and legal claim in the EEOC's Complaint. ECF No. 8, Def. Security Assurance Management, Inc.'s Answer to Complaint ("Answer"). Immediately after filing its Answer, Defendant filed a partial motion seeking dismissal of certain PWFA claims pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 9, Def. Security Assurance Management, Inc.'s Partial Motion to Dismiss ("Def.'s Mot."). In its motion, Defendant asserts the following: that Count Two (Adverse Actions on Account of Requesting Reasonable Accommodations in Violation of the PWFA) should be dismissed as duplicative of Count Four (Retaliation for Engaging in Protected Activities Under the PWFA); that Count Five (Interference with Statutorily Protected Rights Under the PWFA) should be dismissed as duplicative of Count Three (Denial of Employment Opportunities Based on the Need to Make Reasonable Accommodations in Violation of the PWFA); and that Counts Two, Three, and Five should all be dismissed because they are "encompassed" by Count One (Failure to Accommodate in Violation of the PWFA). *Id.* at 3–7.

Defendant's motion suffers from numerous infirmities. Because it was filed after a complete answer, it is moot and also untimely under Rule 12(b)(6). It is substantively improper under that Rule, as it at no point contends, let alone shows, that the EEOC has failed to state any

---

[1] The EEOC has also brought discrimination claims under Sections 701(k) of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978, as well as a claim for retaliation under Section 704(a) of Title VII. Defendant has not moved to dismiss these claims.

plausible claim for relief under the PWFA. Even if considered, Defendant's duplication arguments fail on the merits. Each of Plaintiff's sufficiently pled claims corresponds to separate provisions of the PWFA and requires distinct legal analysis and models of proof. For the reasons set forth fully below, Defendant's motion must be denied.

## II.    ARGUMENT

### A. Defendant's Motion is Moot and Rife with Procedural Irregularities.

Defendant's motion to dismiss is moot because Defendant has also filed a complete, rather than partial, Answer. Despite claiming confusion as to the claims at issue, *see* Def.'s Mot. at 3–7, Defendant has nonetheless responded to every allegation and claim, calling into question the very purpose of its motion. As Defendant has done the very thing that the Court would require it to do upon denying its motion, its motion is moot and should be denied for that reason. *See Leonard v. Enter. Rent a Car*, 279 F.3d 967, 971 n.6 (11th Cir. 2002) (noting that the defendant's post-answer 12(b)(6) motions were a "nullity" because "by filing an answer, the defendants had eschewed the option of asserting by motion that the complaint failed to state a claim for relief"); *Boat Raising & Reclamation v. Victory, a 56'Dania Custom Boat*, No. 2:06-cv-78-FtM-29DNF, 2007 WL 9718694, at *1 (M.D. Fla. Jan. 11, 2007) (denying defendant's post-answer motion to dismiss as moot, as "[i]t [wa]s technically impossible to challenge the sufficiency of an allegation in a complaint, as one does in a motion to dismiss, while simultaneously admitting or denying the same allegation, as one does here").

Defendant's motion is also untimely. A motion filed pursuant to Rule 12(b)(6) "must be made *before* pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b) (emphasis added). Defendant filed its motion (ECF No. 9) after it had already filed its complete Answer

(ECF No. 8).[2] As such, its motion is untimely and should not be considered under Rule 12(b)(6). *See Murphy v. Dep't of Air Force*, 326 F.R.D. 47, 48 (D.D.C. 2018) (J. Ketanji Brown Jackson) (striking the defendant's post-answer Rule 12(b)(6) motion as untimely); *Wall v. Reliance Standard Life Ins. Co.*, No. 20-cv-2075 (EGS/GMH), 2022 WL 594540, at *2–3 (D.D.C. Feb. 28, 2022) (same).

In addition to its procedural infirmities, Defendant's motion is substantively improper under Rule 12(b)(6), as it has failed to make the required showing under that rule. Despite reflexively invoking the familiar *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) plausibility standards, *see* Def.'s Mot. at 2, Defendant never argues (let alone shows) that, taking as true the factual allegations contained in the Complaint, the EEOC's PWFA counts fail to state a claim upon which relief can be granted. As such, it has omitted the fundamental inquiry of any Rule 12(b)(6) motion, and one for which the movant bears the burden. *See Sickle v. Torres Advanced Ent. Sols., LLC*, 884 F.3d 338, 344 (D.C. Cir. 2018) ("[A] Rule 12(b)(6) motion tests the legal sufficiency of a claim or complaint"); *Cohen v. Bd. of Trs. of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 481 (D.C. Cir. 2016) ("[W]hen faced with a 12(b)(6) motion, the district court must answer the single question of whether the movant

---

[2] The EEOC acknowledges that very little time elapsed between Defendant's filings. However, courts have strictly interpreted the requirement that a motion to dismiss be filed before the answer. *See, e.g.*, *Murphy v. Dep't of Air Force*, No. 1:17-cv-01911-KBJ (June 26, 2018, Minute Order) ("Despite answering the complaint . . . Defendant has now moved to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6) . . . . Such a motion is improper in this case, as Rule 12 expressly states that '[a] motion asserting any of [the Rule 12(b)] defenses must be made before pleading if a responsive pleading is allowed.'"); *see also Hinton v. Ala. State Univ.*, No. 2:18-cv-994-WKW, 2019 WL 1923658, at *1 (M.D. Ala. Apr. 30, 2019) (dismissing as untimely a post-answer motion to dismiss filed on the same day as the answer); *Mitchell v. Ala. Dep't of Labor*, No. 2:16-cv-666-WKW-SRW, 2018 WL 4621928, at *4 (M.D. Ala. Aug. 29, 2018), *recommendation adopted by* 2018 WL 4621819 (M.D. Ala., Sept. 26, 2018) (concluding the defendant's post-answer motion filed on the same day as the answer should be denied as untimely and finding it significant that the defendant's attorney, not the Clerk of Court, had chosen in which order to file the materials).

[has] met [its] burden—in other words, whether the complaint includes enough facts to state a claim for relief that is plausible on its face.") (internal quotation marks omitted). As Defendant has not articulated, in any way, how the EEOC's detailed factual allegations have failed to state claims for relief under the identified PWFA provisions, Defendant's Rule 12(b)(6) motion must be denied.

Finally, while some courts have converted untimely Rule 12(b)(6) motions into Rule 12(c) motions for judgment on the pleadings, if converted, Defendant's motion fares even worse under the applicable Rule 12(c) standard, which is a merits decision. "Unlike a motion under Rule 12(b), in a motion under Rule 12(c) the 'movant must demonstrate that the law entitles him to win given the undisputed facts that have been alleged in both parties' pleadings' and that 'no material fact is in dispute.'" *Young v. Perdue*, No. 19-2144 (RC), 2020 WL 3448011, at *2 (D.D.C., June 24, 2020) (quoting *Murphy*, 326 F.R.D. at 49). "Because Rule 12(c) provides judicial resolution at an early stage of a case, the party seeking judgment on the pleadings shoulders a heavy burden of justification," and dismissal is inappropriate "if material questions of fact are presented by the pleadings." *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Marine Corp.*, 933 F.3d 751, 760–61 (D.C. Cir. 2019) (internal quotation marks omitted). As Defendant's motion "does not address the existence or absence of disputed material facts, nor does it attempt to evaluate the merits of the complaint's claims in light of existing law," *Murphy*, 326 F.R.D. at 50, even construed as a Rule 12(c) motion, Defendant's motion fails, *id.* at 48–50 (detailing the differences between 12(b)(6) and 12(c) motions, concluding that defendant had not met the applicable Rule 12(c) standard, and declining to convert the untimely Rule 12(b)(6) motion into a Rule 12(c) motion as a result); *see also Benas v. Baca*, No. CV-00-11507-LGB, 2001 WL 485168, at *11 (C.D. Cal. Apr. 23, 2001) (concluding that the defendant's duplication

argument was "not a proper basis for dismissal under Rule 12(c)" as defendant had "not contended that Plaintiff's sixth cause of action [wa]s legally insufficient; only that it [wa]s duplicative"). For the reasons stated below, even if Defendant's duplication arguments are considered on the merits, they nonetheless fail.

### B.  The EEOC Has Not Pled Duplicative PWFA Claims.

"Claims are duplicative when they 'stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available.'" *DTCC Data Repository (U.S.) LLC v. United States Commodity Futures Trading Comm'n*, 25 F. Supp. 3d 9, 19 (D.D.C. 2014) (quoting *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010)). Because this standard identifies all three requirements in the conjunctive—with the term "and"—the alleged duplicative claim must satisfy all three requirements before the court may dismiss the claim as duplicative. *See, e.g.*, *Pulsifer v. United States*, 601 U.S. 124, 127, 133, 153 (2024).

Defendant contends that the claims in Counts Two and Four are duplicative, as are Counts Three and Five, and that the Court should also dismiss Counts Two, Three, and Five because they are all "encompassed" within Count One. However, in reaching these conclusions, Defendant has failed to make the necessary showing required under the test.

#### 1.  Count Two is Not Duplicative of Count Four and is Not "Redundant" of Count One.

##### a.  The counts do not stem from identical allegations.

The face of the Complaint reveals that Counts Two and Four present materially different allegations. These counts are based on different statutory provisions of the PWFA that provide different protections against discrimination based on different protected characteristics, and they are subject to different causation and motive requirements.

First, the counts each rely on different statutory bases for liability. Count Two, titled

"Adverse Actions on Account of Requesting Reasonable Accommodations in Violation of the PWFA," presents a claim under 42 U.S.C. § 2000gg-1(5). Compl. at 12. That "adverse actions" provision prohibits covered entities from "tak[ing] adverse action in terms, conditions, or privileges of employment against a qualified employee on account of the employee requesting or using a reasonable accommodation to the known limitations related to the pregnancy, childbirth, or related medical conditions of the employee." 42 U.S.C. § 2000gg-1(5). In contrast, Count Four, titled "Retaliation for Engaging in Protected Activities Under the PWFA," presents a claim under the statute's distinct prohibition against retaliation, 42 U.S.C. § 2000gg-2(f)(1). Compl. at 14. That "retaliation" provision states that "[n]o person shall discriminate against any employee because such employee has opposed any act or practice made unlawful by this chapter or because such employee made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 2000gg-2(f)(1).

Second, each of these provisions protect different categories of individuals and prohibit employer conduct based on different motives. The "adverse actions" provision protects "qualified employee[s]," a term the PWFA limits to "employee[s] . . . who, with or without reasonable accommodation, can perform the essential functions of the employment position," subject to certain exceptions. *See* 42 U.S.C. § 2000gg-1(5) (protecting "qualified employee[s]"); 42 U.S.C. § 2000gg(6) (defining "qualified employee"). The "retaliation" provision, however, protects "any employee" who engages in the conduct protected by that provision. *See* 42 U.S.C. § 2000gg-2(f)(1). And while the "adverse action" provision prohibits employers from "tak[ing] adverse action in terms, conditions, or privileges of employment . . . on account of the employee requesting or using a reasonable accommodation," 42 U.S.C. § 2000gg-1(5), the "retaliation" provision prohibits employers from "discriminat[ion]" because of the employee's protected

activity, 42 U.S.C. § 2000gg-2(f)(1).

The EEOC's specific allegations in each count reflect these material distinctions between the statutory bases for its claims. In Count Two, the EEOC alleges that "[b]eginning in September 2023," Defendant took "adverse actions against Cooper in the terms, conditions, and privileges of her employment on account of her requesting reasonable accommodations" and that "deprive[d] Cooper of equal employment opportunities . . . on account of her known limitations related to, affected by, or arising out of her pregnancy-related medical condition." Compl. ¶¶ 91, 93.

In contrast, in Count Four the EEOC alleges that "[b]eginning in November 2023," Defendant "retaliat[ed] against Cooper because she engaged in the protected activities of requesting reasonable accommodations . . . and/or complaining when those requested accommodations were not provided." *Id.* ¶ 105. The EEOC further asserts that Defendant's conduct "deprive[d] Cooper of equal employment opportunities and . . . otherwise adversely affect[ed] her status as an employee because she engaged in protected activity." *Id.* ¶ 107. Simply put, the allegations in these counts are different.

Defendant's contentions to the contrary are without merit. Defendant asserts that both counts allege that it acted against Cooper "because she requested reasonable accommodations." Def.'s Mot. at 3–4. But Defendant ignores that Count Four further alleges that Cooper suffered retaliation not only for requesting reasonable accommodations, but also because she subsequently complained to Defendant about its failure to accommodate her. *See* Compl. ¶ 105. A claim that an employer took action against an employee because she complained about not being accommodated is plainly distinct from taking action because she requested accommodations in the first place.

Defendant further asserts (Def.'s Mot. at 4) that both counts describe the same conduct by

Defendant: "removing Cooper from the work schedule; disciplining her for absences caused by Defendant's failure to accommodate her lactation needs; and discharging her or, in the alternative, constructively discharging her by creating work conditions so intolerable that a reasonable person in Cooper's circumstances would have felt compelled to resign their employment." Compl. ¶ 92 (Count Two), ¶ 106 (Count 4). But Defendant's argument fails to appreciate what this Court has long recognized: When determining whether claims are duplicative, "the bare fact that multiple claims rely on overlapping conduct is not inherently problematic." *Allen v. Mnuchin*, No. CV 18-1214 (RC), 2019 WL 2581323, at *6 (D.D.C. June 24, 2019). In concluding that claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), were not duplicative, this Court recognized that "the D.C. Circuit made clear that the same acts may simultaneously support different types of Title VII claims since plaintiffs are free to plead alternative theories of harm that might stem from the same allegedly harmful conduct." *Id.* (cleaned up) (quoting *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 195 (D.D.C. 2012)) (citing *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011)). Accordingly, "[s]uch employment discrimination claims can implicate two distinct legal standards" without being duplicative. *Id*; *see also DTCC Data Repository*, 25 F. Supp. 3d at 19 (finding no duplication where the claims rely on the same factual basis but different legal theories of liability premised on the distinct statutory violations alleged in each count). That is exactly what the EEOC has done here.

> **b. The counts will not be decided under identical legal standards.**

Defendant cannot show that the claims at issue in Counts Two and Four would be decided under the same legal standards, for the simple—and not meaningfully contested—reason that different legal standards govern the discrimination and retaliation claims presented in these

counts. In support of its contrary argument, Defendant makes no effort to describe the legal

standards that govern these Counts. *See* Def.'s Mot. at 4. Instead, it simply asserts that the

"[c]omplaint provides no separate legal standards to differentiate the claims." *Id.* However, its

suggestion that the EEOC must plead in the Complaint the legal standards that will apply to its

claims is flatly incorrect. It is long-settled that "under the Federal Rules of Civil Procedure, a

complaint need not pin [a] plaintiff's claim for relief to a precise legal theory," *Jones v. Air Line

Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011) (quoting *Skinner v. Switzer*, 562 U.S.

521, 530 (2011)), and that "an employment discrimination plaintiff is not required to plead every

fact necessary to establish a *prima facie* case to survive a motion to dismiss," *id.* (citing

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

      In any event, the legal standards governing these claims are not identical.[3] Each count is

governed by standards recognized as distinct by the Supreme Court, in the analogous context of

Title VII discrimination and retaliation claims.

      The EEOC brought its claim in Count Two under the "nondiscrimination" provision of the

PWFA, 42 U.S.C. § 2000gg-1(5). Compl. at 12. That provision states that "[i]t shall be an

unlawful employment practice for a covered entity to . . . take adverse action in terms, conditions,

or privileges of employment against a qualified employee" on a protected basis. 42 U.S.C.

§ 2000gg-1(5). That language is functionally identical to Title VII's prohibition on

discrimination, which provides that "[i]t shall be an unlawful employment practice for an

employer . . . to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment" because of a characteristic protected by the statute. 42

---

[3] At this early stage in litigation, the EEOC reserves the right to assert additional or separate legal theories as the case develops, including those identified following discovery in this matter. *See Jones*, 642 F.3d at 1104.

U.S.C. § 2000e-2(a)(1).

Because Congress chose to use essentially the same language in both Title VII and the PWFA to describe prohibited discriminatory actions by an employer, courts should interpret both statutes' use of that language identically. *See, e.g.*, *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) ("[W]hen Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that Congress intended that text to have the same meaning in both statutes."); *see also* Antonin Scalia & Bryan A. Garner, Reading Law (2012) 323 ("[W]hen a statute uses the very same terminology as an earlier statute—especially in the very same field, such as securities law or civil-rights law—it is reasonable to believe that the terminology bears a consistent meaning.").

This same reasoning applies with equal force to the EEOC's claim in Count Four that Defendant violated the PWFA's antiretaliation provision, which uses essentially identical language to Title VII's protection against retaliation. *Compare* 42 U.S.C. § 2000gg-2(f)(1) (PWFA's antiretaliation provision: "No person shall discriminate against any employee because such employee has opposed any act or practice made unlawful by this chapter or because such employee made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter"), *with* 42 U.S.C. § 2000e-3(a) (Title VII's antiretaliation provision, making it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter").

As the Supreme Court recently reiterated, the legal standards governing Title VII's

discrimination and retaliation provisions are materially distinct. *Muldrow v. City of St. Louis*, 601 U.S. 346, 357–58 (2024); *see also Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67 (2006) ("Title VII's substantive provision and its antiretaliation provision are not coterminous."). In *Muldrow*, the Court addressed the level of harm a plaintiff must experience to support a discrimination claim as to the terms, conditions, and privileges of employment under § 2000e-2(a)(1) of Title VII, and concluded that a plaintiff need only show she suffered "some harm" to support such a claim. *Muldrow*, 601 U.S. at 350, 354–55. In contrast, the governing harm standard for Title VII retaliation claims—set out by the Supreme Court in *Burlington Northern*—requires a plaintiff to "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68 (2006) (cleaned up); *see also, e.g.*, *Ramos v. Garland*, 77 F.4th 932, 938 (D.C. Cir. 2023) (discussing *Burlington N.*). And *Muldrow* rejected the respondent's argument that the Court should import the "materially adverse" retaliation standard "into [Title VII's] anti-discrimination provision," noting that doing so "would create a mismatch" because *Burlington Northern* "adopted the [well-might-dissuade] standard for reasons peculiar to the retaliation context" that are not "applicable to the discrimination bar." *Muldrow*, 601 U.S. at 357–58. Accordingly, Counts Two and Four, which invoke the corresponding non-discrimination and anti-retaliation sections of the PWFA, will not be decided under identical standards.

> ## c. Because Defendant has not shown the necessary elements of the duplicative-claim test, its motion fails as to Counts Two and Four.

As described previously, for a claim to be dismissed as duplicative, all three elements of the duplicative-claim test need to be established. *See supra* pp. 6. Here, Defendant has failed to

show that Counts Two and Four stem from the same factual allegations (element one), *and* that the two counts will be decided under the same legal theories (element two). That the EEOC may obtain back pay under 42 U.S.C. § 2000e-5(g)(1), and compensatory and punitive damages under 42 U.S.C. § 1981a, for violations of Sections 103 and 104 of the PWFA, *see* 42 U.S.C. § 2000gg-2(a), is, therefore, irrelevant. Defendant has not established all required elements, so its motion as to Counts Two and Four must be denied.[4]

### d.  Count Two is not "redundant" of Count One.

At the end of its discussion of Counts Two and Four, Defendant also offers an additional, undeveloped assertion that Count Two should be dismissed because there is "redundancy" with Count One, as in Count Two the EEOC alleges Cooper "was adversely affected and suffered damages due to the alleged failure of Defendant to provide her with a reasonable accommodation." Def.'s Mot. at 5.

To the extent Defendant is attempting to offer an additional duplicative-claim argument for dismissal of Count Two, it has failed to develop any meaningful argument and therefore has forfeited argument on the issue. *See id.*; *see also Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) (holding that a party forfeits an argument when it only mentions it "in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones").

---

[4] While it is difficult to determine the precise contours of Defendant's argument on this point given its cursory development, to the extent Defendant is raising concerns that proceeding with Counts Two and Four may lead to duplicative recovery for Cooper, any such concerns are inapplicable where, as here, back pay is subject to a precise mathematical formulation and the caps on damages under 42 U.S.C. § 1981a apply to "each complaining party," not to each claim. *See* 42 U.S.C. § 1981a(b)(3). And even in the event a jury were to award duplicative Section 1981a damages, where appropriate, the Court could exercise its discretion to remit a portion of the awarded damages if it found that the verdict "shocks the conscience" or was "obviously unreasonable." *See Hardin v. Dadlani*, 221 F. Supp. 3d 87, 112 (D.D.C. 2016).

In any event, Counts One and Two are neither redundant nor duplicative. First, the claims in each count do not present identical allegations. For example, in Count Two, the EEOC alleges that Defendant violated 42 U.S.C. § 2000gg-1(5) when it took action against Cooper as to her terms, conditions, or privileges of employment because she *requested* reasonable accommodation. Compl. at 12. However, under Count One, the EEOC alleges a violation of a different statutory provision, 42 U.S.C. § 2000gg-1(1), claiming that Defendant failed to *provide* Cooper with reasonable accommodation. *Id.* at 11.

Second, the claims would be decided under different legal standards. As described above, Count Two would be decided under a legal standard that measures whether Cooper suffered "some harm" as a result of Defendant's conduct. *See supra* pp. 12. In contrast, the standard applicable to Count One will measure whether Cooper was entitled to, but not provided, a reasonable accommodation. *See* 42 U.S.C. § 2000gg-1(1). That standard will also take into account the undue-hardship defense, which Defendant has asserted in its Answer. *See* Answer at 41 (Twenty-Sixth Defense). This defense is not available, and would not be part of the legal analysis, under Count Two. *See* 42 U.S.C. § 2000gg-1(5). And while Defendant has not even argued that the relief available is identical (instead simply stating that in both counts, Plaintiff contends that Cooper "suffered damages"), as stated above, because Defendant fails on the first two elements of the duplication test, this issue is irrelevant. *See supra* pp. 12–13.

### 2.   Count Five is Not Duplicative of Count Three

#### a.   The counts do not stem from identical allegations.

Similar to the reasoning described above regarding Counts Two and Four, Counts Three and Five present materially different allegations.

First, these counts involve different statutory provisions. Count Three alleges a violation

of 42 U.S.C. § 2000gg-1(3), which makes it unlawful for an employer to "deny employment opportunities to a qualified employee if such denial is based on the need of the covered entity to make reasonable accommodations" for the employee. Thus, the claim set forth in Count Three is that Defendant "denied Cooper employment opportunities based on the need to make reasonable accommodations" for her pregnancy-related medical condition. Compl. ¶ 98. In contrast, Count Five alleges a violation of 42 U.S.C. § 2000gg-2(f)(2), which prohibits, in relevant part, "interfere[ing] with any individual in the exercise or enjoyment of, or on account of such individual having exercised or enjoyed . . . any right granted or protected" by the PWFA. Accordingly—and distinct from Count Three—Count Five alleges that Defendant "interfered with Cooper's exercise and enjoyment of her rights under the PWFA." Compl. ¶ 112.

Defendant has not shown how these textually divergent provisions yield "identical" allegations in Counts Three and Five. It asserts that the "unlawful actions" alleged under each count are the same because each count refers to the same acts by Defendant. Def.'s Mot. at 5. However, as described previously, this does not render the claims duplicative. *See supra* pp. 8–9; *Allen*, 2019 WL 2581323, at *6 (recognizing that "the same acts may simultaneously support different types of . . . claims"). Defendant simply ignores that the allegations in these counts are based on distinct statutory protections that have different coverage requirements and prohibit different conduct. *See* Def.'s Mot. at 5.

Defendant states that there is a "meaningless distinction" between Counts Three and Five, as "Count Three makes a general reference to a denial of employment opportunities in violation of the PWFA and Count Five includes an extremely generic reference to interference with Cooper's exercise and enjoyment of her rights under the PWFA." *Id.* at 6. But it again fails to appreciate that these counts invoke different statutory provisions that use different language to

15

provide different protections. Therefore, the Court should recognize that the distinction between them is material and not at all meaningless. *See, e.g.*, *Ford v. Mabus*, 629 F.3d 198, 206 (D.C. Cir. 2010) (where Congress "uses different language in different provisions of the same statute, we must give effect to those differences").

### b. The counts will not be decided under identical legal standards.

As with its argument regarding Counts Two and Four, Defendant fails to advance any meaningful argument or explanation of how Counts Three and Five would be decided under identical legal standards. *See* Def.'s Mot. at 6. Instead, it again incorrectly faults the EEOC for not "provid[ing] . . . separate legal standards to differentiate the claims," adding that it "is unclear . . . from the Complaint what Plaintiff considers to be the applicable elements for each of Plaintiff's five separate PWFA claims." *Id.* at 6. However, as explained above, it is well-settled that a plaintiff is not required to plead legal theories or elements of evidentiary frameworks in the complaint. *See supra* pp. 9–10. Defendant's failure to even attempt to explain how these counts would be decided under identical legal standards constitutes forfeiture.[5] *See Bernhardt*, 923 F.3d at 179.

Regardless, Counts Three and Five are subject to distinct legal standards. As described previously, Count Three alleges a violation of 42 U.S.C. § 2000gg-1(3), which makes it unlawful for an employer to "deny employment opportunities to a qualified employee if such denial is based on the need of the covered entity to make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of the qualified employee." Because Congress drafted this provision to require that the employer's "denial [of

---

[5] To the extent Defendant might attempt to make such an argument for the first time in its reply brief, this Court should disregard any such effort due to its failure to present any such argument in its opening brief. *See United States v. Hunter*, 786 F.3d 1006, 1011 (D.C. Cir. 2015).

employment opportunities] is *based on* the need . . . to make reasonable accommodations," (emphasis added), this provision requires the plaintiff to establish that the employer's need to reasonably accommodate the plaintiff motivated its conduct. *See* 42 U.S.C. § 2000gg-1(3).

As to Count Five, the PWFA's interference provision contains language that is identical to the language Congress used to prohibit interference under the Americans with Disabilities Act of 1990 ("ADA"). *Compare* 42 U.S.C. § 2000gg2(f)(2) (PWFA: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of such individual having exercised or enjoyed, or on account of such individual having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter"), *with* 42 U.S.C. § 12203(b) (ADA: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter"). Accordingly, the PWFA's interference provision should be subject to the same standards as the ADA's parallel protection against interference. *See supra* pp. 11. [6]

The D.C. Circuit has thus far declined to decide what legal standard regarding the employer's motivation applies to ADA-based (and therefore, PWFA-based) interference claims. *See Menoken v. Dhillon*, 975 F.3d 1, 10 (D.C. Cir. 2020). In *Menoken*, the plaintiff brought suit under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, which incorporates relevant

---

[6] Count Three likewise contains a parallel provision under the ADA. *See* 42 U.S.C. § 12112(b)(5)(B) (prohibiting employers from "denying employment opportunities to a[n] . . . employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairment of the employee . . . ."). As is apparent from the plain language of each statute's "denying employment opportunities" provisions, both require a plaintiff to establish that the employer's conduct in denying employment opportunities to the plaintiff was motivated by its need to reasonably accommodate the employee.

portions of the ADA, including the ADA's anti-interference provision, and the defendant—the EEOC—moved to dismiss the complaint for failure to state a claim. *Id.* at 4, 9–10. As to the plaintiff's interference claim, the court of appeals noted that there was a "substantive difference" between the tests offered by the parties regarding whether a plaintiff is required to show "discriminatory intent" (the plaintiff's position) or if the proper focus is not on intent but "on how a reasonable employee would have understood the employer's action" without regard to the employer's subjective intent (the EEOC's position). *Id.* at 10. The court of appeals declined to resolve that dispute because the allegations in the plaintiff's complaint could satisfy either standard. *Id.*

Nevertheless, the court did not suggest that an ADA (and now, therefore, PWFA) interference claim required a showing, as is required for a "denied employment opportunities" claim under the PWFA, that the employer's need to reasonably accommodate the plaintiff motivated its alleged interference conduct. *See id.* at 8–11. If anything, *Menoken*'s holding that the ADA's retaliation provision (which bars employer conduct "on the basis of" protected activity) and its interference provision (which has no such language) "are distinct protections" suggests that the D.C. Circuit would agree that the claims in Counts Three and Five are subject to different legal standards.

### c. Because Defendant has not shown the first two elements of the duplicative-claim test, Defendant's motion fails.

For the reasons stated above, *see supra* pp. 12–13, as Defendant has not established either that Counts Three and Five stem from the same factual allegations, or that the two counts will be decided under the same legal theories, Defendant cannot succeed on its duplication argument, regardless of whether EEOC can obtain nonduplicative back pay and Section 1981a damages for both claims. *See* 42 U.S.C. § 2000gg-2(a). Accordingly, Defendant's motion must be denied.

**d. Count Three is not "superfluous" as to Count One, nor is Count Five "fully encompassed" within Count One.**

At the end of its discussion of Counts Three and Five, Defendant asserts that Counts Three and Five should be dismissed because Count Three is "superfluous" as to Count One and Count Five is "fully encompassed" within Count One. *See* Def.'s Mot. at 6–7. As it did regarding Counts Two and Four, *see supra* pp. 13, Defendant is again attempting to assert an additional, undeveloped duplicative-claim argument for dismissing these counts by comparing them to Count One. Because it has again failed to develop its argument on this point, Defendant has forfeited the issue. *See id.*

Notwithstanding this forfeiture, Counts Three and Five are not duplicative of Count One. Under Count One, the EEOC alleges a violation of 42 U.S.C. § 2000gg-1(1) and avers that Defendant violated that provision by failing to provide Cooper with reasonable accommodation. Compl. at 11. In Count Three, the EEOC alleges a different violation of a different statutory provision: that Defendant "denied Cooper employment opportunities based on the need to make reasonable accommodations" in violation of 42 U.S.C. § 2000gg-1(3). *Id.* ¶ 98. And in Count Five, the EEOC alleges a violation of 42 U.S.C. § 2000gg-2(f)(2), asserting that Defendant "interfered with Cooper's exercise and enjoyment of her rights under the PWFA." *Id.* ¶ 112. The legal standards governing these distinct claims will differ as well, as the failure-to-accommodate claim in Count One will measure whether Cooper was entitled to, but not provided, a reasonable accommodation, and whether Defendant can avoid liability by proving undue hardship. *See* 42 U.S.C. § 2000gg-1(1). Counts Three and Five, however, will be subject to standards that measure the different protections offered by the different statutory provisions supporting those counts. *See supra* pp. 14–16. Finally, while Defendant has again not argued that the relief available is identical (instead vaguely stating that in Count One, Plaintiff contends that Defendant's conduct

"caused her to suffer a variety damages"), as stated above, because Defendant fails on the first two elements of the duplication test, this issue is irrelevant. *See supra* pp. 12–13.

## III.    CONCLUSION

For the reasons stated herein, the EEOC respectfully requests that this Court deny Defendant's Partial Motion to Dismiss.

<div style="margin-left:40%">

Respectfully submitted,

/s/ Debra M. Lawrence
DEBRA M. LAWRENCE
Regional Attorney
MD Bar No. 04312

/s/ Maria Luisa Morocco
MARIA LUISA MOROCCO
Assistant Regional Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington Field Office
131 M Street, N.E., Suite 4NWO2F
Washington, D.C. 20507
maria.morocco@eeoc.gov
Phone: (202) 419-0724
DC Bar No. 489956

/s/ Clare J. Horan
CLARE J. HORAN
Trial Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Philadelphia District Office
801 Market Street, Suite 1000
Philadelphia, PA 19107-3127
clare.horan@eeoc.gov
Phone: (267) 589-9769
Fax: (215) 440-2606
MD Bar No. 2001060014

</div>

Date: April 9, 2025

## CERTIFICATE OF SERVICE

I, Clare J. Horan, certify that on April 9, 2025, I caused the foregoing Memorandum of Points and Authorities in Opposition to Defendant's Partial Motion to Dismiss to be electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing to all parties of record.

/s/ Clare J. Horan
CLARE J. HORAN (MD #2001060014)
Trial Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
801 Market Street, Suite 1000
Philadelphia, PA 19107-3127
Phone: (267) 589-9769
Fax: (215) 440-2606
clare.horan@eeoc.gov