**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : : : | | |
| Plaintiff, | : : | Civil Action No.: | 25-00181 (RC) |
| v. | : : | Re Document No.: | 9 |
| SECURITY ASSURANCE MANAGEMENT, INC., | : : : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**DENYING DEFENDANT'S PARTIAL MOTION TO DISMISS**

**I. INTRODUCTION**

The U.S. Equal Employment Opportunity Commission ("Plaintiff") brings this employment discrimination action against Security Assurance Management, Inc. ("Defendant") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. § 2000gg *et seq*. Plaintiff alleges that Defendant disciplined and removed an employee, Simone Cooper ("Ms. Cooper"), from her assignment due to her pregnancy-related condition and her need for accommodations. Plaintiff further claims that Defendant denied Ms. Cooper reasonable accommodations, retaliated against her for requesting them, and took adverse action after she complained about the lack of accommodations.

Currently pending before the Court is Defendant's partial motion to dismiss. Defendant moves to dismiss multiple of Plaintiff's PWFA claims as duplicative. Upon consideration of the

parties' submissions, the Court concludes for the following reasons that it must deny Defendant's motion.

## II. BACKGROUND

### A. Factual Background[1]

In April 2021, Defendant hired Ms. Cooper as an Unarmed Special Police Officer. Compl. ¶ 12, ECF No. 1. From July 2022 to March 2023, Defendant stationed Ms. Cooper at the District of Columbia Department of Behavioral Health's Comprehensive Psychiatric Emergency Program ("CPEP"), where she worked five days a week. *Id*. ¶¶ 13, 19. While stationed at CPEP, Ms. Cooper's job performance was satisfactory; she never received negative performance evaluations or discipline. *Id*. ¶ 14. In March 2023, Ms. Cooper was pregnant in her third trimester but did not require or request any pregnancy-related accommodations while stationed at CPEP. *Id*. ¶¶ 15, 16. On March 5, 2023, Defendant informed Ms. Cooper that she could not return to work because CPEP did not want her working on its jobsite while pregnant. *Id*. ¶ 17. After her removal from CPEP, Ms. Cooper asked Defendant for additional work, but Defendant failed to schedule her at another jobsite with a schedule comparable to what she had at CPEP. *Id*. ¶ 20. During the weeks after Ms. Cooper's removal from CPEP, Defendant scheduled Ms. Cooper to work a total of one and a half days at a different jobsite. *Id*. ¶ 18. Ms. Cooper gave birth and began maternity leave on March 30, 2023. *Id*. ¶ 21.

In September 2023, Ms. Cooper returned from maternity leave. *Id*. ¶ 22. Defendant assigned her to work Tuesday through Saturday at a Hampton Inn as an Unarmed Special Police

---

[1] The Court's reporting of events is drawn from the factual allegations pled in the Complaint. *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020). For purposes of Defendant's motion, these allegations are taken as true. *Baumann v. D.C.*, 744 F. Supp. 2d 216, 222 (D.D.C. 2010).

Officer. *Id.* ¶ 22. From September to December 2023, Ms. Cooper was breastfeeding and had a pregnancy-related medical condition, lactation, but could nonetheless perform the essential functions of her job as an Unarmed Special Police Officer. *Id.* ¶¶ 23–24. During this time, Ms. Cooper repeatedly requested accommodations from Defendant, including a private lactation room where she could pump and a work schedule (or floor assignment at the jobsite) that would permit her to take breaks to pump at the appropriate times. *Id.* ¶ 26.

Despite having knowledge of Ms. Cooper's pregnancy-related medical condition, *id.* ¶ 27, Defendant repeatedly denied or ignored Ms. Cooper's accommodation requests, *see id.* ¶¶ 37, 40–41, 46, 53, 60. In late September 2023, Defendant assigned Ms. Cooper on Saturdays to floors at the jobsite that corresponded with break times that were too early to allow her to pump effectively. *Id.* ¶¶ 34–37. As a result, Ms. Cooper leaked through her clothing during the workday on at least two occasions: September 30, 2023 and October 21, 2023. *Id.* ¶¶ 48, 56, 58, 59, 70. On October 21, 2023, Ms. Cooper notified the supervisor that she had leaked through her clothing and left work early to "express properly in a private place" and "shower." *Id.* ¶ 58–59. Defendant also failed to provide Ms. Cooper with an appropriate lactation room; one room that Defendant provided was a shared room that other employees could access, and the other room provided did not appear to exist. *Id.* ¶¶ 51, 64–67. Because Defendant had not provided her with a suitable lactation room, Ms. Cooper had to pump in her car in the Hampton Inn parking lot. *See, e.g.*, ¶ 45. Due to the lack of accommodations, Ms. Cooper called out of her Saturday shifts. ¶¶ 40, 55, 63.

Ms. Cooper, her union representative, and attorney attempted to contact Defendant numerous times to discuss her requests for reasonable accommodations, but Defendant never responded. *Id.* ¶¶ 54, 67, 69. On one occasion, Defendant directed Ms. Cooper to speak to a

particular site manager, and when Ms. Cooper attempted to do so, she was told that "there was no site manager with that name." *Id*. ¶ 52. After the September 30 and October 21 incidents, when Ms. Cooper leaked through her clothing, Ms. Cooper and her union representatives complained to Defendant that Ms. Cooper's lactation needs were not being met. *Id*. ¶¶ 62, 69.

Defendant did not schedule Ms. Cooper for any Saturday shifts in November 2023. *Id*. ¶ 68. On December 1, 2023, Defendant issued Ms. Cooper a written warning for "excessive absenteeism," a pattern which, according to the warning, developed on Saturdays. *Id*. ¶ 71. The warning included the Saturdays in November in which Defendant did not schedule Ms. Cooper to work. *Id*. ¶ 73. The warning also disciplined Ms. Cooper for leaving work early when she leaked through her clothing on October 21, 2023. *Id*. ¶ 74. Prior to December 1, 2023, Defendant had never issued Ms. Cooper any warning, counseling, or discipline regarding her attendance at work. *Id*. ¶ 75. Upon receiving the written warning, Ms. Cooper informed Defendant that she was able to work on Saturdays, so long as Defendant accommodated her schedule so she could pump during the workday. *Id*. ¶ 76. After December 1, 2023, Defendant never scheduled Ms. Cooper for a shift. *Id*. ¶ 77. After having remained off the schedule for over a month, Ms. Cooper accepted a full-time position at another security firm in January 2024. *Id*. ¶ 79.

### B. Procedural Background

In January 2025, Plaintiff initiated this action. Compl., ECF No. 1. The Complaint alleges two claims under Title VII and five claims under the PWFA. The five PWFA claims are as follows:

(i) Count One: Failure to Accommodate in Violation of the PWFA (42 U.S.C. § 2000gg-1(1));

  (ii)  Count Two: Adverse Actions on Account of Requesting Reasonable Accommodations in Violation of the PWFA (42 U.S.C. § 2000gg-1(5));

  (iii)  Count Three: Denial of Employment Opportunities Based on the Need to Make Reasonable Accommodations in Violation of the PWFA (42 U.S.C. § 2000gg-1(3));

  (iv)  Count Four: Retaliation for Engaging in Protected Activities Under the PWFA (42 U.S.C. § 2000gg-2(f)(1)); and

  (v)  Count Five: Interference with Statutorily Protected Rights Under the PWFA (42 U.S.C. § 2000gg-2(f)(2)).

On March 20, 2025, Defendant filed a complete answer to Plaintiff's complaint. Def.'s Answer, ECF No. 8. After it filed its complete answer, Defendant filed a partial motion to dismiss for failure to state a claim, albeit the same day. Def.'s Mot., ECF No. 9. Defendant's motion seeks dismissal of Count Two (Adverse Actions), Count Three (Denial of Employment Opportunities), and Count Five (Interference) because they are purportedly duplicative.

### III. LEGAL STANDARD

Before turning to the merits of Defendant's motion, the Court must first address a technical procedural issue. Defendant styled its motion as a partial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See* Def.'s Mot. 1–2. Such a motion is only available before a party has filed a responsive pleading. Fed. R. Civ. P. 12(b) ("A motion [under Rule 12(b)] . . . must be made before pleading if a responsive pleading is allowed."). Defendant filed a complete answer before its partial motion to dismiss. *See* Def.'s Answer, ECF No. 8; Def.'s Mot., ECF No. 9. Defendant is therefore not entitled to relief under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b); *see also Green v. Henry Cnty Comm'n,* No. 1:19-CV-874-ALB, 2020 WL 974388,

5

at *2 (M.D. Ala. Feb. 28, 2020) ("When the attorney dictates the order in which simultaneous filings should be docketed, he should generally live with the consequences of his decision."). Under the circumstances, the Court will construe Defendant's motion as a partial motion for judgment on the pleadings under Rule 12(c).[2] *See Alemayehu v. Abere*, 298 F. Supp. 3d 157, 163–64 (D.D.C. 2018) (collecting cases doing the same). The standard under both rules is virtually identical. *See Bloom v. McHugh*, 828 F. Supp. 2d 43, 49 (D.D.C. 2011) ("Because . . . the standards for a Rule 12(b)(6) motion and a Rule 12(c) motion for judgment on the pleadings are identical, courts routinely construe motions to dismiss that are filed after a responsive pleading as motions for judgment on the pleadings . . . .").

Accordingly, the Court will grant Defendant's motion only if Defendant can demonstrate that no material fact is in dispute and that it is entitled to judgment as a matter of law. *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992) (quotation marks omitted). In evaluating a Rule 12(c) motion, courts must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable inferences drawn from well-pleaded factual allegations. *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 59 (D.D.C. 2007). "Because Rule 12(c) provides judicial resolution at an early stage of a case, the party seeking judgment on the pleadings shoulders a heavy burden of justification." *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 933 F.3d 751, 760 (D.C. Cir. 2019).

---

[2] In its reply, Defendant states that "it matters not to Defendant" whether the Court construes its motion as a 12(b)(6) motion or a Rule 12(c) motion. Def.'s Reply Supp. Mot. 2–3, ECF No. 13.

## IV. ANALYSIS

Defendant moves to dismiss Count Two (Adverse Actions), Count Three (Denial of Employment Opportunities), and Count Five (Interference) because they are duplicative. Specifically, Defendant contends that:

(i) Count Two (Adverse Actions) is duplicative of Count Four (Retaliation) and Count One (Failure to Accommodate);

(ii) Count Five (Interference) is duplicative of Count Three (Denial of Employment Opportunities); and

(iii) Count Five (Interference) and Count Three (Denial of Employment Opportunities) are both duplicative of Count One (Failure to Accommodate).

"Duplicative claims are those that stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010) ("duplicative-claim test"). "As a matter of judicial economy, courts should dismiss" such duplicative claims. *Id.* at 81. Analyzing Count Two (Adverse Actions), Count Three (Denial of Employment Opportunities), and Count Five (Interference) under the duplicative-claim test, the Court finds that none are duplicative. The Court addresses each of Defendant's arguments in turn.

### A. Count Two and Count Four

First, Defendant argues that Count Two (Adverse Actions) and Count Four (Retaliation) are duplicative because the claims arise from the same alleged conduct. The Court, however, is not persuaded that these claims concern identical allegations. To be sure, the alleged "adverse actions" listed under Count Two (Adverse Actions) are the same as the "unlawful retaliatory practices" listed under Count Four (Retaliation)—namely, that Defendant removed Ms. Cooper

7

from the work schedule, disciplined her for absences, and discharged or constructively discharged her. *See* Compl. ¶¶ 92, 106. Nonetheless, "read[ing] the allegations of the complaint as a whole," *Ho v. Garland*, 106 F.4th 47, 54 (D.C. Cir. 2024), the Court reads Count Two (Adverse Actions) and Count Four (Retaliation) as asserting different motivations for the alleged conduct.

Count Two (Adverse Actions) alleges that Defendant's conduct violated 42 U.S.C. § 2000gg-1(5), which makes it unlawful to "take adverse action in terms, conditions, or privileges of employment against a qualified employee on account of the employee requesting or using a reasonable accommodation." 42 U.S.C. § 2000gg-1(5); Compl. ¶ 91. The Complaint asserts that Plaintiff repeatedly requested reasonable accommodations between September and December 2023. *Id*. ¶¶ 26, 36–38, 40–41, 43–46, 56-58, 64–67, 76. After Ms. Cooper requested these accommodations, Defendant later removed her from the work schedule, disciplined her, and failed to place her back on the schedule. *Id*. ¶¶ 68, 71–73, 77–78.  Count Two (Adverse Actions) alleges that Defendant acted adversely against Ms. Cooper because she requested accommodations. *See* Compl. ¶ 91 ("on account of her requesting reasonable accommodations").

On the other hand, Count Four (Retaliation) alleges that Defendant's conduct violated 42 U.S.C. § 2000gg-2(f)(1), which makes it unlawful to "discriminate against any employee because such employee has opposed any act or practice made unlawful by [the PWFA]." 42 U.S.C. § 2000gg-2(f)(1); Compl. ¶ 105. According to the Complaint, Ms. Cooper repeatedly complained to Defendant about the lack of accommodations. On September 25, 2023, Ms. Cooper filed a union grievance based on Defendant's failure to accommodate her. Compl. ¶ 42. After Ms. Cooper leaked through her clothing on September 30, 2023, Ms. Cooper and her union representatives complained that Defendant had not granted Ms. Cooper's accommodation

8

requests. *Id.* ¶ 49. Ms. Cooper and her union representatives continued to complain that Ms. Cooper's lactation needs were not being addressed after she, once again, leaked through her clothing on October 21, 2023. *Id.* ¶¶ 58–59, 62. After Ms. Cooper complained, Defendant later removed her from the work schedule, disciplined her, and failed to place her back on the schedule. *Id.* ¶¶ 62,71–79. Count Four claims that Defendant retaliated against Ms. Cooper "because she . . . complain[ed] when [the] requested accommodations were not provided." *Id.* ¶ 105.

Count Two (Adverse Actions) and Count Four (Retaliation) thus assert different motivations for Defendant's allegedly unlawful conduct. And there is a meaningful difference between (a) allegations that Defendant took action against Ms. Cooper because she complained about not being accommodated (Count Four) and (b) allegations that Defendant took action against Ms. Cooper because she requested accommodations in the first place (Count Two). *See U.S. ex rel. Schweizer v. Oce N. Am.*, 956 F. Supp. 2d 1, 13 (D.D.C. 2013) ("[W]here Congress has given plaintiffs the right to sue employers for adverse actions taken against them by their employers 'because of' X, plaintiffs may succeed only by showing that X was a 'but-for' cause of the adverse action, not merely one of several 'motivating factors.'"). Because Count Two (Adverse Actions) and Count Four (Retaliation) arise from different allegations, the claims are not duplicative. *See Wultz,* 755 F. Supp. 2d at 81.

### B.  Count One and Count Two

Next, Defendant argues that Count One (Failure to Accommodate) and Count Two (Adverse Actions) are duplicative because the allegations are redundant. Def.'s Mot. 3–4. But even if the allegations are the same, such claims involve different legal standards, failing the second prong of the duplicative-claim test.

9

Failure-to-accommodate claims, like Count One, measure whether a plaintiff was entitled to, but not provided, a reasonable accommodation. The PWFA contains largely the same failure-to-accommodate provision as the Americans with Disabilities Act ("ADA").[3] And under the ADA, a plaintiff bringing a failure-to-accommodate claim must show that: "(i) she was disabled; (ii) her employer had notice of her disability; (iii) she was able to perform the essential functions of her job with or without reasonable accommodation; and (iv) her employer denied her request for a reasonable accommodation of that disability." *Solomon v. Vilsack*, 763 F.3d 1, 9 (D.C. Cir. 2014) (citations omitted). Applying that standard to Count One (Failure to Accommodate), Plaintiff must show that: (a) Ms. Cooper had a pregnancy, childbirth, or related medical condition; (b) that Defendant had notice of Ms. Cooper's condition; (c) Ms. Cooper could perform the essential functions of her job with or without reasonable accommodation; (d) and Defendant denied Ms. Cooper's reasonable-accommodation request because of that condition.[4]

---

[3] *Compare* 42 U.S.C. § 2000gg-1(1) (PWFA) (unlawful to "not make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee"), *with* 42 U.S.C. § 12112(b)(5)(A) (ADA) (unlawful to "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability").

[4] Where the language of the PWFA mirrors that of the ADA or Title VII, the Court applies the legal standards governing ADA and Title VII claims to Plaintiff's corresponding PWFA claims, as the PWFA, ADA, and Title VII all share the same purpose: eliminating workplace discrimination. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85–86 (2006) ("[W]hen judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well." (citation modified)); 82 C.J.S. Statutes § 458 (2025) (statutes relating to the same subject matter "generally should be read as together constituting one law and should be harmonized if possible"); *see also Chambers v. D.C.*, 35 F.4th 870, 878 (D.C. Cir. 2022) ("Title VII's purpose [is] ending discrimination in the workplace."); Pub. L. No. 101–336, § 2, 104 Stat. 327, 328–29 (1990) (ADA) (purpose is eliminating discrimination, including the workplace); H.R. Rep. No. 117–27, pt. 1, at 1, 5 (2021) (PWFA) (same).

On the other hand, Count Two (Adverse Actions) alleges a violation of § 2000gg-1(5), which is similar to Title VII's § 2000e-2(a)(1).[5] To bring a claim under § 2000e-2(a)(1), a plaintiff must show: (a) "some harm respecting an identifiable term or condition of employment," *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024); and that (b) the employer acted discriminatorily "'because of'… [a] protected trait," *id.* at 358 (quoting § 20000e-2(a)(1)). Applying that standard to Count Two (Adverse Actions), Plaintiff would need to show that: (a) Ms. Cooper suffered "some harm" related to a term or condition of her employment; and (b) Defendant acted adversely "on account of" (i.e., "because of") Ms. Cooper requesting or using a reasonable accommodation. Count One (Failure to Accommodate) and Count Two (Adverse Actions) are therefore analyzed under separate legal standards and are thus not duplicative. *See Wultz*, 755 F. Supp. 2d at 81.

### C.  Count Three and Count Five

Defendant further argues that Count Three (Denial of Employment Opportunities) and Count Five (Interference) are duplicative because both concern the same allegations. To the contrary, the allegations underlying these claims are not identical, nor do they implicate the same legal standards.

Count Three (Denial of Employment Opportunities) alleges that Defendant violated 42 U.S.C. § 2000gg-1(3). Compl. ¶ 98. Section 2000gg-1(3) makes it unlawful for an employer to "deny employment opportunities to a qualified employee if such denial is based on the need of

---

[5] *Compare* § 2000gg-1(5) (PWFA) (unlawful for an employer "to . . . take adverse action in terms, conditions, or privileges of employment against a qualified employee on account of the employee requesting or using a reasonable accommodation"), *with* § 2000e-2(a)(1) (Title VII) (unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [a protected characteristic]").

11

the covered entity to make reasonable accommodations" for the employee's pregnancy- or childbirth-related medical conditions. 42 U.S.C. § 2000gg-1(3). Under the ADA's equivalent statute, § 12112(b)(5)(B),[6] a plaintiff "must show that she was denied an employment opportunity . . . specifically because of [the defendant's] need to reasonably accommodate [the plaintiff's] disability." *Cathcart v. Flagstar Corp.*, No. 97-1977, 1998 WL 390834, at *17 (4th Cir. June 29, 1998) (for her § 12112(b)(5)(B) claim, the plaintiff failed to show she was denied an employment opportunity specifically because the defendant did not want to reasonably accommodate her disability) ("There simply is insufficient evidence in the record that the need to accommodate Cathcart's disability, in particular, was the motivating factor behind Brown's decision not to place her in a generalist position."); *Crider v. Amerigas Propane, Inc.*, No. 1:16-CV-4331-ELR-LTW, 2019 WL 12872651, at *17 (N.D. Ga. Aug. 7, 2019), *report and recommendation adopted in part, rejected in part*, No. 1:16-CV-4331-ELR-LTW, 2019 WL 12762940 (N.D. Ga. Aug. 13, 2019) (declining to find that the plaintiff's discrimination claim was a recasting of his § 12112(b)(5)(B) claim; the discrimination claim focused on the effect of discriminatory animus towards his disability, whereas the § 12112(b)(5)(B) claim focused on the discrimination resulting from the need to accommodate the plaintiff).

Applying that standard to Count Three (Denial of Employment Opportunities), Plaintiff must show that Defendant denied Ms. Cooper employment opportunities specifically because it had to accommodate her. Indeed, the Complaint alleges that during the December 1 disciplinary meeting, Ms. Cooper stated that she could work Saturdays, so long as Defendant accommodated

---

[6] Section 12112(b)(5)(B) makes it unlawful for an employer to "deny[] employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5)(B).

her lactation needs. Compl. ¶ 76. Thereafter, Defendant failed to schedule Ms. Cooper for any work at any jobsite, and she was forced to take employment at a different security firm. *Id.* ¶¶ 77–79.

Conversely, Count Five (Interference) alleges that Defendant violated 42 U.S.C. § 2000gg-2(f)(2)), which makes it unlawful "to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of such individual having exercised or enjoyed . . . any right granted or protected by [the PWFA]." 42 U.S.C. § 2000gg-2(f)(2)). Under the ADA's analogous statute, § 12203(b),[7] "a plaintiff must first show that she was 'engaged in statutorily protected activity by requesting a reasonable accommodation for a disability, or that she was actively engaged in asserting those rights at the time the alleged interference occurred.'" *Menoken v. Burrows*, 656 F. Supp. 3d 98, 107 (D.D.C. 2023) (quoting *Menoken v. Dhillon*, 975 F.3d 1, 11 (D.C. Cir. 2020)). A plaintiff must next establish "that her employer's actions interfered with her rights." *Burrows*, 656 F. Supp. 3d at 107. Accordingly, Count Five (Interference) requires Plaintiff to show that: (1) at the time of the interference, Ms. Cooper was requesting a reasonable accommodation or asserting her rights under the PWFA; and (2) Defendant interfered with those rights. The Complaint indeed contends that Defendant gave Ms. Cooper the runaround when she requested accommodations. Defendant repeatedly ignored Ms. Cooper's calls to discuss accommodations, failed to evaluate or follow up on her accommodation requests, and directed her to speak with a non-existent site manager regarding those requests. Compl. ¶¶ 41, 46, 52–54, 67. Because they concern different allegations and are analyzed under

---

[7] Section 12203(b) makes it unlawful "to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA]." 42 U.S.C. § 12203(b).

different legal standards,[8] Count Three (Denial of Employment Opportunities) and Count Five (Interference) are not duplicative. *See Wultz*, 755 F. Supp. 2d at 81.

### D.  Count One, Count Three, and Count Five

Finally, Defendant claims that Count Three (Denial of Employment Opportunities) and Count Five (Interference) are both duplicative of Count One (Failure to Accommodate). The Court disagrees. As discussed above, Count One (Failure to Accommodate) requires Plaintiff to show that Ms. Cooper had a pregnancy-related medical condition of which Defendant was aware, Ms. Cooper could perform her job's essential functions, and Defendant denied her request for reasonable accommodations. *See supra*, at 10. By contrast, Count Five (Interference) requires a showing that Ms. Cooper requested a reasonable accommodation or asserted rights under the PWFA and that Defendant interfered with those rights. *See supra*, at 13–14. Count Three (Denial of Employment Opportunities), on the other hand, requires a demonstration that Defendant withheld employment opportunities from Ms. Cooper specifically because of the need to accommodate her. *See supra*, at 11–12. These claims are all analyzed under different legal standards. Count One (Failure to Accommodate), Count Three (Denial of Employment Opportunities), and Count Five (Interference) are therefore separate and distinct claims.[9] *See Wultz*, 755 F. Supp. 2d at 81.

---

[8] To be sure, the Circuit has not yet decided "whether such interference must be done with 'discriminatory intent' or whether it depends on 'how a reasonable employee would have understood the . . . action.'" *Burrows*, 656 F. Supp. 3d at 107 (*quoting Dhillon*, 975 F. 3d at 10). Nonetheless, regardless of which standard applies as to the employer's motivation for the interference, either standard is different than the standard applicable to Count Three (Denial of Employment Opportunities). *See supra*, at 11–12.

[9] The Court's conclusion is consistent with the Circuit's recognition that, in the analogous context of the ADA and the Rehabilitation Act, failure-to-accommodate claims are separate and distinct from interference claims. *See Dhillon*, 975 F.3d at 9 (the district court erred in finding that an interference claim under § 12203(b) is not separate and distinct from a claim alleging failure to reasonably accommodate); *see also Burrows*, 656 F. Supp. 3d at 109 ("Menoken's

14

## V. CONCLUSION

For the foregoing reasons, Defendant's partial motion to dismiss is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  October 14, 2025                                                                        RUDOLPH CONTRERAS
                                                                                                            United States District Judge

---

interference claim will survive even though none of the accommodations she ultimately sought were reasonable.").